CHARLES SUTHERLAND, APPELLEE, v. MAY E. SUTHERLAND, APPELLANT.

272 N. W. 549

FILED APRIL 8, 1937. No. 29886.

*Rosewater, Mecham, Shackelford & Stoehr* and *Jay P. Gibbs,* for appellant.

*Johnsen, Gross & Crawford, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE and CARTER, JJ., and ELDRED and CHASE, District Judges.

PAINE, J.

This is an appeal by the defendant from a decree granting a divorce to her husband and dismissing her cross-petition for separate maintenance.

Among the errors set out for reversal, it is charged that the decree is not supported by sufficient evidence, that plaintiff was guilty of gross misconduct toward defendant, that it was error to grant husband an absolute divorce without granting the wife any alimony, and that the divorce was granted contrary to the provisions of section 42-335, Comp. St. 1929.

The evidence is very voluminous, being found in a bill of exceptions of 400 pages, and only a few points will be

briefly set out in this opinion. Much of the evidence is very conflicting and can scarcely be reconciled.

The plaintiff, who was born in 1880, married the defendant, who was a widow with three children, on March 18, 1908, at Council Bluffs, and to this union there were seven children born, and six are still living. After the marriage the plaintiff worked for a few years as foreman of the pickle department in a packing-house in South Omaha, and then got a job on the city fire department, where he worked for some 23 years, being retired as a senior captain, with a life pension of a little over $100 a month. During their married life they had accumulated two houses and lots and also some cash.

The wife began an action for separate maintenance and support, which was granted her in a decree rendered October 4, 1933, in which action she was given a monthly allowance and one house and lot, and the plaintiff was given the other. The evidence discloses that she at once paid off the mortgage on the property she secured with cash, which cash the plaintiff claims was money taken from the safety deposit box containing their joint savings, but which the defendant denies. The plaintiff was unable to pay off the mortgage on the house and lot awarded to him, and when it was sold and the mortgage and other past-due bills paid he had but $305 left from the sale.

The parties stipulated that, in accordance with the decree in the separate maintenance action of the wife, the husband had paid the following items: To attorney, $67.45; clerk of the district court, $32.55; and alimony payments to the wife in the sum of $1,232.50.

The plaintiff owed bills, at the time of trial of the case at bar, of approximately $1,000, over $600 being due to doctors, nurses, and hospitals, and the testimony shows that plaintiff is in need of hospital treatment because of chronic arthritis, by which plaintiff is permanently disabled. The evidence discloses that in 1911 plaintiff was caught between an overhead bridge and the fire truck, which necessitated long confinement in bed and the wear-

ing of a back brace for a long time. In 1929 he received a compound fracture of his left leg, which laid him up for nearly a year. At the present time he walks with difficulty with a cane, and, according to one of the doctors, he needs treatment for a long time in bed, with his back immobilized in a plaster of Paris cast; that such treatment would not bring about a cure, but would help his chronic arthritis of the upper lumbar and lower thoracic vertebræ, which is growing progressively worse.

Pages of testimony are found in this long bill of exceptions of incidents which occurred years prior to the former hearing. Each party apparently indulged in the same liberty, without the slightest restriction. After the matter had been fully submitted, we are satisfied that the trial judge, who had also presided at the first trial, rendered a decree of absolute divorce based only upon the happenings subsequent to the former decree.

The defendant argues that the testimony of the plaintiff was uncorroborated. With this we do not agree. There was abundant testimony of cruelty practiced upon the plaintiff, sufficiently corroborated by testimony of others, with proper inferences therefrom.

In the decree entered by Judge Rhoades, he stated that the defendant is not entitled to any further alimony payments or property rights. However, the plaintiff was required by the decree in the instant case to pay to the clerk of the court $15 a month for the support of the minor daughter, Lillian, until a certain date, and was required to pay defendant's attorney $100, and all costs.

It appears from the transcript that no motion for a new trial was filed in this case by the attorney then in the employ of the defendant. It has been announced from time to time that a motion for new trial must be filed and overruled in the district court to authorize a review of rulings on evidence in an equity case. *Farmers Loan & Trust Co. v. Joseph,* 86 Neb. 256, 125 N. W. 533; *Stuhr v. City of Grand Island,* 120 Neb. 491, 233 N. W. 886.

Many similar cases of second decrees have been before

this court, such as *Stocker v. Stocker*, 112 Neb. 201, 199 N. W. 23, and *Mann v. Mann*, 124 Neb. 639, 247 N. W. 602. The appellant in his brief refers to the "syllabus" in the *Mann* case. However, no syllabus appears in our official report of this case. The paragraphs placed at the head of the case, where it is republished in 247 N. W. 602, read as follows:

"Decree awarding wife support and maintenance *held* not to preclude husband from seeking divorce for cruelty at subsequent term."

"Where wife was granted decree for support, and husband subsequently filed petition for divorce, testimony relating to events antedating original decree could not be considered."

The first decree, awarding the wife separate maintenance, did not prove satisfactory. Quite often much embarrassment is caused the parties by these partial dissolutions of the marital relations. *McKnight v. McKnight,* 5 Neb. (Unof.) 260, 98 N. W. 62. The husband, finding the situation intolerable, as is shown by the evidence, brought the action for divorce.

The appellant complains that the defendant, by this decree of absolute divorce, will be cut off from the widow's pension should she survive the plaintiff, and that this great injustice cries out for correction. We have carefully considered this phase of the case, but it is not controlling. The sole question, we believe, is whether the plaintiff has established his right to a divorce by a preponderance of all of the evidence.

The trial court, during the course of two hotly-contested actions between these same parties, doubtless acquired by that experience an ability to judge wisely in reference to the stories told by the principals, the members of their family, and the many other witnesses called to testify. This court tries this case *de novo,* and yet we have said that, when the testimony of the witnesses upon the vital question involved is conflicting, this court will consider the fact that an experienced trial judge observed these wit-

nesses and their manner of testifying, and accepted one version of the facts rather than the other. *Southern Surety Co. v. Parmely,* 121 Neb. 146, 236 N. W. 178; *Maryland Casualty Co. v. Geary,* 123 Neb. 851, 244 N. W. 797. We believe that the trial court had some very definite advantages over the members of this court, by observing with care each of the witnesses, their manner of testifying, and their apparent fairness or bias, and his decree clearly indicates that he reached the conclusion that, under all the circumstances, the plaintiff was entitled to a divorce, and that the defendant was not entitled to alimony.

After a careful examination of the evidence, we find no error in the decree of the trial court, and the same is

AFFIRMED.